Marianne **WUILLAMEY** et al., Plaintiffs,

v.

David A. **WERBLIN** and Richard J. Sullivan, Defendants.

Civ. A. No. 1099–73.

United States District Court, D. New Jersey.

Aug. 27, 1973.

Mezey & Mezey, by Frederick C. Mezey, New Brunswick, N. J., for plaintiffs.

Pitney, Hardin & Kipp, by James C. Pitney, Newark, N. J., for defendant David A. Werblin.

Joseph M. Clayton, Jr., Deputy Atty. Gen., for defendant Richard J. Sullivan.

## OPINION AND ORDER

COOLAHAN, District Judge:

This is a suit brought by certain individuals and environmental organizations, on behalf of themselves and those similarly situated, seeking an injunction under Fed.R.Civ.Proc. 65 against construction of the Hackensack Meadowlands Sports Complex authorized under the

New Jersey Sports and Exposition Authority Law, N.J.S.A. 5:10–1 et seq.[1] Plaintiffs also seek a judgment to the effect that the New Jersey statute is fatally inconsistent with the Clean Air Act, 42 U.S.C. § 1857 et seq., and must therefore be enjoined under the Supremacy Clause. Gibbons v. Ogden, 22 U.S. (9 Wheat.) 1, 6 L.Ed. 23 (1824).

Federal jurisdiction is based on the claim that the state statute conflicts with a federal statute which, by virtue of the Supremacy Clause, is controlling. As stated in Swift & Company v. Wickam, 382 U.S. 111 at 127, 86 S. Ct. 258 at 267, 15 L.Ed.2d 194 (1965), " . . . cases of conflict [of a state statute] with a federal statute . . . follow their normal course in a single judge [federal district] court." Other bases alleged for jurisdiction of this court are 28 U.S.C. § 1331 (federal question) and 42 U.S.C. § 1857h–2(a) (establishment of citizen's right to bring suit under the Clean Air Act).[2]

No party to this proceeding has addressed the question of whether these particular plaintiffs, as individuals, possess the requisite standing to bring suit. For a plaintiff to possess standing, there must be claimed injury to a *legally protected* interest, *i. e.,* " . . . a wrong which directly results in the violation of a legal right." Alabama Power Company v. Ickes, 302 U.S. 464, 479, 58 S.Ct. 300, 303, 82 L.Ed. 374 (1938). Although the parties' contentions concern themselves almost exclusively with air pollution, there apparently does not as yet exist a legally protected interest, *per se*, in maintaining pollution-free air. That these plaintiffs, as individuals, do possess sufficient standing to secure this court as a proper forum can, however, be descried from a reading of the policy and purposes of the Clean Air Act itself. As stated in 42 U.S.C. § 1857(a)(2), " . . . the growth in the amount and complexity of air pollution brought about by . . . the increasing use of motor vehicles, has resulted in mounting dangers to the public health and welfare. . . ." And in 42 U.S.C. § 1857(b)(1) it is stated that the purposes of the Clean Air Act include protection and enhancement of " . . . the quality of the Nation's air resources so as to promote the public health and welfare and the productive capacity of its population." Enactment of the Clean Air Act into law was plainly intended to protect the health and welfare of, among others, these plaintiffs, who are citizens and inhabitants of the United States. The impairment of the plaintiffs' health that is alleged to be a probable deleterious consequence of construction of the Sports Complex constitutes a sufficiently grave invasion of a legally protected interest to confer standing.

The Sports Complex is currently planned to comprise a large stadium and a race track. The stadium alone is to have a capacity of around 75,000 persons, and parking is to be provided for about 25,000 motor vehicles. The Complex is to be financed by selling close to

---

1. Among the environmental and conservationist organizations are New Jersey Citizens for Clean Air, Inc. (whose president is plaintiff Eisler), Hoboken Environment Committee, Hudson River Fisherman's Association, Weehauken Environment Committee, C.A.P.A.-B.L.E., Save the Palisades Association (chairman, Drago), Citizens Committee of Hudson County, and the Hudson County Citizens for Clean Air.

Defendant Werblin is the Chairman of the New Jersey Sports and Exposition Authority. Defendant Sullivan is the Commissioner of the New Jersey Department of Environmental Protection.

This Opinion will not address the question of whether this action is, or can be brought under Fed.R.Civ.Proc. 23 as a class action.

2. The court finds that jurisdiction does not lie under 42 U.S.C. § 1857h–2(a), as that section pertains only to an action brought " . . . to enforce . . . an emission standard or limitation . . . ," and to an action in the nature of mandamus against the Administrator of the federal Environmental Protection Agency. Because no final standard or limitation exists, none can be enforced. And the Administrator has not been named as a party-defendant in the present proceedings.

$270,000,000 worth of bonds to private investors.

The proposed Complex has produced extensive litigation in the state courts. New Jersey Sports and Exposition Authority v. McCrane, 119 N.J.Super. 457, 292 A.2d 580 (L.Div.1972), aff'd as modified 61 N.J. 1, 292 A.2d 545 (1972), exhaustively deals with the state issues presented. See also In re Sports Complex Hackensack Meadowlands, 62 N.J. 248, 300 A.2d 337 (1973).

■ Plaintiffs in the instant litigation seek injunctive relief against the continued construction of the Complex. In this Circuit, there are four "essential criteria" that must be satisfied by one seeking a preliminary injunction. Succinctly put in Winkleman v. New York Stock Exchange, 445 F.2d 786, 789 (3d Cir. 1972), these comprise ". . . (1) irreparable harm to appellants, absent such stay; (2) absence of substantial harm to other interested parties; (3) absence of harm to the public interest; (4) a likelihood that appellants would prevail on the merits." Plaintiffs' argument appears to be that, unless an injunction issues, the Complex when constructed and the vehicular traffic it generates must be in violation of the applicable national ambient air quality standards found in 40 C.F.R. § 50.1 et seq.

■■ Plaintiffs in the case at bar do not seek to abate a presently existing nuisance. Rather, they seek equitable relief against a possible future violation of federal air quality standards. The extensive hearings conducted between July 10 and August 11, 1972 by the New Jersey Department of Environmental Protection concluded, however, that ". . . the Sports Complex will not interfere with the State of New Jersey achieving the National Ambient Air Quality Standards for sulphur dioxide [sulphur oxides, 40 C.F.R. §§ 50.4, 50.5], particulates [40 C.F.R. §§ 50.6, 50.7], and oxidants [photochemical oxidants, 40 C.F.R. § 50.9] . . . ." Hearing Officers' Report and Recommendations at 55. This finding of fact, though pertaining to events in futuro, is sufficiently buttressed by technical expertise to render it unassailable before a court of law. An estimate of possible air pollution generated by use of the Complex in 1975 (its scheduled completion date) is, at best, highly speculative. Such speculation seems entirely to foreclose the plaintiffs' ability to demonstrate that, absent an injunction, they will suffer any harm, "irreparable" or other.[3]

Since the plaintiffs at bar cannot carry their burden of showing irreparable harm to them absent injunctive relief, it becomes unnecessary to consider the other Winkleman criteria. In passing, however, the court notes that, since the harm complained of is entirely in futuro, the likelihood is remote that plaintiffs could "prevail on the merits," i. e., demonstrate that the national air quality standards will probably be exceeded. Accordingly, the application for a preliminary injunction against continued construction of the Complex is denied.

The plaintiffs also seek a judgment that N.J.S.A. 5:10–1 et seq. is repugnant to 42 U.S.C. § 1857 et seq., and therefore void under the Supremacy Clause. Their attack is premised on the following syllogism: (1) The New Jersey statute, as interpreted by the New Jersey Supreme Court, requires that the Complex be located only in the Hackensack Meadowlands. (2) Placing the Complex in the Meadowlands must cause the national ambient air quality standards to be exceeded in the New Jersey-

---

3. Should use of the Complex cause excessive pollution, those aggrieved have remedy in a suit at common law to abate a public nuisance. Further, 42 U.S.C. § 1857d(k) permits a federal injunction to abate excessive pollution on an emergency basis, on the application of the Attorney General. This section was recently invoked in the United States District Court for the Northern District of Alabama, Pointer, J., to curtail industrial production in Birmingham until a health emergency had abated. See also 42 U.S.C. § 1857d(g)(1), permitting similar abatement across state lines.

New York-Connecticut metropolitan region, or at least in that portion of the region adjacent to the Complex. (3) Therefore the state statute permitting the Complex to be constructed violates federal law.

 The court is not persuaded by this argument for several reasons. First, as seen *supra*, there is no proof that the Complex will cause federally mandated pollution levels to be exceeded. Second, the New Jersey statute could be superceded by a federal statute *only* if the federal law expressed a Congressional intent to preempt the state's exercise of its power *in the same field*. As stated in Schwartz v. Texas, 344 U.S. 199, 202–203, 73 S.Ct. 232, 235, 97 L.Ed. 231 (1952), "[i]t will not be presumed that a federal statute was intended to supersede the exercise of the power of the state unless there is a clear manifestation of [Congressional] intention to do so." N.J.S.A. 5:10–1 et seq. does not concern itself with air pollution. Rather, it simply permits a sports stadium and attendant facilities to be developed in one area of the Meadowlands. Since the subjects dealt with by the juxtaposed statutes are entirely different (an open-air hippodrome and air pollution), no claim can be heard that Congress intended to supercede the state's exercise of power *in the same field*. The completed Complex will of course have to comply with whatever final pollution standards are promulgated under the authority of the Clean Air Act. The court is sure that the Sports and Exposition Authority will obey the law. The fact that the standards may not, at some future point in time, be met does not constitute a question arising under the Supremacy Clause or, apparently, a question of any constitutional dimension. The court concludes that no question of federal preemption of or conflict with a state statute is presented under the Supremacy Clause.

Plaintiffs finally contend that a Clean Air Act regulation, 40 C.F.R. § 52.1590, which appears as part of the New Jersey proposed transportation control plan at 38 Fed.Reg. 17790 (July 3, 1973), has not been complied with by the defendants and that therefore the project is proceeding in violation of federal law. The regulation reads in pertinent part as follows:

§ 52.1590 Management of parking supply.

(a) Definitions:

(1) "Construction" means fabrication, erection, or installation of a parking facility, or any conversion of land to use as a facility.

. . . . . .

(4) "Commenced" means the date on which an owner or operator and a contractor to, or affiliate of such owner or operator, enter into a binding agreement or contractual obligation to undertake and complete, within a reasonable time, a continuous program of construction, modification, or enlargement.

(5) Parking facility (also called "facility") means any facility, building, structure, or lot or portion thereof used primarily for temporary storage of motor vehicles.

(b) This regulation is applicable in all areas within the New Jersey portion of the New Jersey-New York-Connecticut Interstate Region. . . .

(c) No person, after the date of this proposed regulation, shall commence construction of any new parking facility or modify or enlarge any existing parking facility until he has first received from the Administrator or from an agency approved by the Administrator a permit stating that construction, modification, or enlargement of such facility will not interfere with the attainment of applicable Federal Air Quality Standards.

Plaintiffs' contention is that the defendants have never received a permit from the Administrator of the federal Environmental Protection Agency to con-

struct their proposed 25,000 vehicle parking lot. But 40 C.F.R. § 52.1590 is only a *proposed* regulation. 38 Fed. Reg. 21505 (Aug. 9, 1973) reports that the United States Court of Appeals for the District of Columbia Circuit ". . . has granted a request that the deadline for promulgation [of the New Jersey transportation control plan, 38 Fed.Reg. 17782–92] be October 15, 1973." This court is not prepared to disregard the mandate of the Court of Appeals having direct responsibility for supervision and promulgation of the transportation control plan.

A proposed regulation may be modified or abandoned. It does not have the force of law. Since 40 C.F.R. § 52.1590 is at this date not final, plaintiffs cannot be heard to complain that it is being violated.[4]

For the foregoing reasons it is ORDERED that the complaint be, and hereby is, dismissed. Costs shall not be awarded either party.

4. The fact that the period during which the public may submit comments in writing to the Environmental Protection Agency has now, under 38 Fed.Reg. 21505, been extended until August 15, 1973 indicates that some parts of the transportation control plan may be modified or abandoned by October 15, 1973. Among these may be 40 C.F.R. § 52.1590(c). Only if § 52.1590(c) is promulgated as a final regulation as of October 15, 1973 will the question of whether the phrase "the date of this proposed regulation" refers to July 3, 1973 or October 15, 1973, be ripe for resolution.