**COURT OF CHANCERY**
**OF THE**
**STATE OF DELAWARE**

JOSEPH R. SLIGHTS III
  VICE CHANCELLOR

417 S. State Street
Dover, Delaware 19901
Telephone: (302) 739-4397
Facsimile: (302) 739-6179

May 25, 2016

***Via* File&Serve*Xpress***
**and First Class Mail**

Mr. Salih Hall
464 Bethune Drive
Wilmington, DE  19801

Mr. Kevin Howard
James T. Vaughn Correctional Center
1181 Paddock Road
Smyrna, DE  19977

Stuart B. Drowos, Esquire
Roopa Sabesan, Esquire
Department of Justice
820 N. French Street, 6th Floor
Wilmington, DE  19801

> Re: *Hall, et al. v. Coupe, et al.*
> C.A. No. 10307-VCS
> Date Submitted: December 1, 2015

Dear Mr. Hall, Mr. Howard, and Counsel:

Plaintiffs are a current and a former inmate of the James T. Vaughn

Correctional Center (the "JTVCC"), a Delaware correctional facility.  They have

initiated this action as a means to challenge the constitutionality of a Delaware

statute that denies inmates access to certain Department of Correction policies and procedures.

Defendants are Robert M. Coupe, the Commissioner of the Department of Correction, Perry Phelps, Chief of the Bureau of Prisons and David Pierce, Warden of the JTVCC (collectively "Defendants"). They have moved to dismiss Plaintiffs' complaint on the grounds that it does not plead facts that invoke this Court's jurisdiction and does not state a claim upon which this Court may grant the requested relief. The motion is granted on both grounds.

## I.     BACKGROUND

### A. The Statute at Issue

Delaware has adopted a comprehensive statutory scheme to address the use and dissemination of information relating to sentencing and incarceration of individuals convicted of crimes in this State.[1] The statutory provisions at issue here are 11 *Del. C.* § 4322(c) & (d) ("Sections 4322(c) & (d)"), which expressly

---

[1] *See* 11 *Del. C.* § 4322(a)–(i).

prohibit the Department of Correction ("DOC") from providing certain DOC policies and procedures to any inmate.[2]

## B. Procedural Posture

In their Complaint, Plaintiffs seek a declaration that Sections 4322(c) & (d) are unconstitutional on two grounds: (1) the provisions violate art. II, § 1 of the Delaware Constitution (the "non-delegation doctrine")[3] "by making the exercise of the [DOC's] authority unaccountable,"[4] and (2) the provisions violate art. II, § 16

---

[2] Specifically, Sections 4322(c) & (d) provide that:

> (c) No inmate shall be provided a copy of the Department of Correction Policy and Procedures Manuals, The Bureau of Prisons Policy and Procedures Manuals, nor any of the Department of Correction Facilities Operational Procedures, Administrative Regulations and Post Orders.

> (d) The Department of Correction Policies and Procedures, including any Policy, Procedure, Post Order, Facility Operational Procedure or Administrative Regulation adopted by a Bureau, facility or department of the Department of Correction shall be confidential, and not subject to disclosure except upon the written authority of the Commissioner.

[3] Art. II, § 1 of the Delaware Constitution provides that "[t]he legislative power of this State shall be vested in a General Assembly, which shall consist of a Senate and House of Representatives." *See* Randy J. Holland, *The Delaware State Constitution, A Reference Guide* 71 (2002) (noting that the thrust of the non-delegation doctrine is that "the General Assembly cannot delegate [its] legislative powers [including the power to make laws] to others").

[4] Bill of Complaint in Equity ("Compl." or "Complaint") ¶ 14.

of the Delaware Constitution (the "Single-Subject Provision") because the statute in which they appear purports to "embrace more than one subject."[5] They ask the Court to declare that all DOC "policies, procedures, administrative regulations and operational policies . . . [must] be properly promulgated to the inmate population, and the general public."[6] They also seek injunctive relief that would prohibit the DOC from engaging in any operations or procedures inconsistent with the requested declaratory relief.

Defendants have moved to dismiss the Complaint on the ground that Plaintiffs have not alleged an injury sufficient to invoke this Court's jurisdiction. Alternatively, they argue that the Complaint fails to state an actionable claim for relief. Plaintiffs opposed Defendants' Motion to Dismiss and filed a Cross Motion for Summary Judgment. After the parties completed briefing on these motions, Plaintiff Howard filed a Motion to Amend the Complaint. In this opinion, the Court addresses all pending motions.

---

[5] The Single-Subject Provision provides that "[n]o bill or joint resolution, except bills appropriating money for public purposes, shall embrace more than one subject, which shall be expressed in its title." Del. Const. art. II, § 16.

[6] Compl. ¶ 22.

## II.   ANALYSIS

### A. Rule 12(b)(1) and 12(b)(6) Standard of Review

When considering a motion to dismiss under Court of Chancery Rule 12(b)(1), the Court's first task, when appropriate, is to assess whether the fundamental predicates to subject matter jurisdiction exist, including the plaintiff's standing to pursue the claims.[7] The Court then turns its focus to the "nature of the wrong alleged" to determine whether Chancery's limited jurisdiction has been invoked.[8] The plaintiff "bears the burden of establishing this Court's jurisdiction," and when determining whether that burden has been met, the Court may consider the pleadings and matters "extrinsic to the pleadings."[9]

When considering whether a plaintiff's pleading states a viable claim for relief under Court of Chancery Rule 12(b)(6), the Court will accept as true all well-pled factual allegations and draw reasonable inferences in the plaintiff's favor.[10]

---

[7] *See Dover Historical Soc. v. City of Dover Planning Comm'n*, 838 A.2d 1103, 1110 (Del. 2003).

[8] *McMahon v. New Castle Assocs.*, 532 A.2d 601, 603 (Del. Ch. 1987).

[9] *Pitts v. City of Wilmington*, 2009 WL 1204492, at *5 (Del. Ch. Apr. 27, 2009).

[10] *Calesa Assocs., L.P. v. Am. Capital, Ltd.*, 2016 WL 770251, at *8 (Del. Ch. Feb. 29, 2016).

The Court will not, however, accept conclusory allegations "unsupported by specific facts" or draw unreasonable inferences from the Complaint.[11] Dismissal is appropriate only where the Court determines "with reasonable certainty that the plaintiff would not be entitled to relief under any set of facts susceptible of proof."[12]

The Court will view pleadings filed by *pro se* litigants with forgiving eyes. Even so, proceeding *pro se* will not relieve Plaintiffs of their obligation to "allege sufficient facts to state a plausible claim for relief"[13] or "to present and support cogent arguments warranting the relief sought."[14]

### B. The Complaint Fails to Allege an Injury-in-Fact Sufficient to Confer Standing

To invoke this Court's jurisdiction, the Plaintiff must establish the elements of standing: (1) an injury-in-fact, (2) a causal connection between the injury and

---

[11] *Nemec v. Shrader*, 991 A.2d 1120, 1125 (Del. 2010) (internal quotation marks omitted).

[12] *Id.*; *Cent. Mortg. Co. v. Morgan Stanley Mortg. Capital Hldgs. LLC*, 27 A.3d 531, 535 (Del. 2011) (the Court will deny a motion to dismiss "unless the plaintiff would not be entitled to recover under any reasonably conceivable set of circumstances").

[13] *Walker v. City of Wilmington*, 2014 WL 4407977, at *9 (Del. Ch. Sept. 5, 2014).

[14] *Kelly v. Fuqi Int'l, Inc.*, 2013 WL 135666, at *6 (Del. Ch. Jan. 2, 2013).

the allegedly wrongful conduct, and (3) that a decision favoring the plaintiff is likely to redress the injury.[15]  When pleading an injury-in-fact, "general allegations . . . are sufficient to withstand a motion to dismiss because it is 'presume[d] that general allegations embrace those specific facts that are necessary to support the claim.'"[16]  Such "general allegations," however, must support a reasonable inference of some "concrete and actual invasion of a legally protected interest[]."[17]

Standing is a threshold jurisdictional requirement.[18]  Before the Court may consider the merits of Plaintiffs' claim that Sections 4322(c) & (d) are unconstitutional, therefore, it first must determine whether Plaintiffs have pled

---

[15] *Reeder v. Wagner*, 974 A.2d 858 (Del. 2009) (TABLE).

[16] *Dover Historical Soc.*, 838 A.2d at 1110 (alteration in original) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992)).

[17] *Reeder*, 974 A.2d 858.

[18] *Dover Historical Soc.*, 838 A.2d at 1110 ("Standing is a threshold question that must be answered by a court affirmatively to ensure that the litigation before the tribunal is a 'case or controversy' that is appropriate for the exercise of the court's judicial powers." (citations omitted)).

facts from which it may reasonably be inferred that they have standing to bring their claims.[19]

Plaintiffs do not allege that they have been denied access to any DOC policy or procedure during their term of confinement.[20] Rather, the sole allegation of harm in the Complaint is that DOC's authority to deny inmates access to DOC policies and procedures, whether exercised or not, "deprives both the inmate population and the general population of the procedural protections and safeguards required to assure no abuse of authority is carried out with the taxpayers [sic] dollars."[21] According to Plaintiffs, the denial of access to DOC policies and

---

[19] *Reeder*, 974 A.2d 858 (the burden of pleading the elements of standing rests with the party seeking to invoke the court's jurisdiction). *See also State ex rel. Gebelein v. Killen*, 454 A.2d 737, 752 (Del. 1982) ("[C]ourts will usually decline to reach a constitutional question if a decision can be reached on other grounds.").

[20] In their response to the Motion to Dismiss and Cross Motion for Summary Judgment, Plaintiffs allege, without details, that Mr. Howard has sought and has been denied access to DOC facility-specific policies relating to, *inter alia*, inmate classification, good time credit, work release and religious programming. As a general rule, the Court will not allow factual allegations raised for the first time in response to a motion to dismiss to substitute for well-pled facts in a complaint. *In re Gen. Motors (Hughes) S'holder Litig.*, 897 A.2d 162, 168 (Del. 2006). Even if the Court looked past Plaintiffs' violation of the general rule, however, for the reasons explained below, Plaintiffs' vague allegations of denied access to DOC internal procedures fail to satisfy their burden to allege injury in fact.

[21] Compl. ¶ 17.

procedures violates the requirement in 11 *Del. C.* § 6517 ("Section 6517") that the Commissioner of the DOC "[p]romulgat[e] rules and regulations to carry out the Commissioner's duties and operate the [DOC]." This violation, Plaintiffs contend, constitutes a violation of the non-delegation doctrine embodied within Delaware's Constitution.[22]

Plaintiffs read too much into Section 6517. As Plaintiffs correctly observe, Section 6517 generally states that the "duties and responsibilities" of the Commissioner of the DOC include "promulgating rules and regulations." But this general assignment of rulemaking responsibility is a far cry from a statutory mandate that the Commissioner must provide inmates access to the DOC internal "policies and procedures" identified in Sections 4322(c) & (d). The two statutes, by their express terms, concern two different founts of information. Section 6517 addresses DOC "rules and regulations" regarding the core functions of the Commissioner and the DOC[23]; Sections 4322(c) & (d), on the other hand, address

---

[22] *Id.* ¶ 14. *See* Del. Const. art. II, § 1.

[23] *Rule Definition*, DICTIONARY.COM, http://www.dictionary.com/browse/rule (last visited May 23, 2016) ("rule": "a principle or regulation governing conduct"); *Regulation Definition*, DICTIONARY.COM, http://www.dictionary.com/browse/regulation (last

DOC institutional "policies and procedures."[24]  Nothing in these statutes suggests that the Commissioner's duty to promulgate certain "rules and regulations" can be contorted into a statutory mandate that the DOC turnover its internal operating "policies and procedures" to inmates incarcerated within DOC facilities.[25]  This reading of Sections 4322(c) & (d) is entirely consistent with Delaware's Administrative Procedures Act in which the General Assembly expressly authorizes State agencies to "[d]ecline to make available [to the public] documents and other materials which [r]elate solely to the agency's internal procedural or personnel practices."[26]

---

visited May 23, 2016) ("regulation": "a law, rule, or other order prescribed by authority, especially to regulate conduct").

[24] *Policy Definition*, DICTIONARY.COM, http://www.dictionary.com/browse/policy (last visited May 23, 2016) ("policy": "a definite course of action adopted for the sake of expediency"); *Procedure Definition*, DICTIONARY.COM, http://www.dictionary.com/browse/procedure (last visited May 23, 2016) ("procedure": "a manner of proceeding in any action or process").

[25] *See Sharif v. Dillman*, 1988 WL 7386, at *2 (Del. Ch. Feb. 2, 1988) (holding that inmates do not possess a right to DOC policies and procedures "simply because [such] administrative rules have been promulgated"), *aff'd*, 549 A.2d 699 (Del. 1988).

[26] *See* 29 *Del. C.* § 10112(b)(4); *Jackson v. Danberg*, 2008 WL 1850585, at *3 (Del. Super. Apr. 25, 2008).

Moreover, it is difficult to discern how a statute that prevents the DOC from providing inmates access to policies and procedures that offer them no substantive rights—such as policies regarding security classifications, housing or internal DOC programs—could possibly form the basis of a legally cognizable injury to any inmate or to the public at large.[27] At best, the policies and procedures the Plaintiffs seek access to would be informational. Once possessed they could do nothing constructive with them.

Because the Complaint does not allege a legally protected interest affected by, or an injury-in-fact caused by, Sections 4322(c) & (d), Plaintiffs have not

---

[27] *See Wilson v. Taylor*, 466 F. Supp.2d 567, 571–72 (D. Del. 2006) (holding that there is "no constitutionally protected liberty interest in a prisoner's security classification," housing, employment or other specific rehabilitation opportunities); *Ross v. Dep't of Correction*, 722 A.2d 813, 814 (Del. 1998) (acknowledging that the General Assembly's adoption of Sections 4322(c) & (d) mooted prisoner-petitioner's appeal challenging the Superior Court's denial of their access to the DOC's operational and administrative policies); *Jackson*, 2008 WL 1850585, at *4 (holding that an inmate had no right to access the DOC's internal lethal injection protocol), *aff'd*, 962 A.2d 256 (Del. 2008); *Riley v. Taylor*, 1999 WL 41279, at *3 (Del. Super. Jan. 6, 1999) (holding that Sections 4322(c) & (d) properly "preclude prisoner access to prison policies and procedures . . . [relating] to the classification and general administration of prisoners, with the exception of rules pertaining to prisoner discipline" which are subject to disclosure and dissemination to inmates pursuant to 11 *Del. C.* § 6535).

satisfied their burden of establishing standing.[28]   Defendants' Motion to Dismiss

under Rule 12(b)(1) must be granted.

### C. Sections 4322(c) & (d) Withstand Constitutional Scrutiny

Even if the Court were to excuse Plaintiffs' failure to demonstrate standing,

which it cannot do,[29] the end result would not change.  It is clear from the face of

the Complaint that Plaintiffs' constitutional challenges lack any merit.  To recount,

Plaintiffs' constitutional arguments are twofold:   First, they assert that the

enactment of Sections 4322(c) & (d) "undermine[s] their constitutional and

administrative law rights" because "all state agencies created by the legislature"[30]

must exercise their authority by "[p]romulgating rules and regulations,"[31] yet

Sections 4322(c) & (d) authorize the DOC to refrain from "promulgating" such

---

[28] *Wuillamey v. Werblin*, 364 F. Supp. 237, 240 (D.N.J. 1973) ("For a plaintiff to possess standing, there must be claimed injury to a legally protected interest, *i.e.*, '. . . a wrong which directly results in the violation of a legal right.'" (alteration in original) (quoting *Alabama Power Company v. Ickes*, 302 U.S. 464, 479 (1938))).

[29] *Dover Historical Soc.*, 838 A.2d at 1110.

[30] Pls.' Resp. to Defs.' Mot. to Dismiss and Cross Mot. for Summ. J. ("Pls.' Reply Br.") ¶ 6.  Such an authorization, Plaintiffs continue, allows the DOC to operate "beyond legitimate bounds of its discretionary power within the meaning of the [n]on-delegation doctrine."

[31] Section 6517.

information to the inmate population in violation of the non-delegation doctrine. Second, they argue that Sections 4322(c) & (d) violate the Single-Subject Provision of Delaware's Constitution because "there is no natural and logical connection between investigative [presentence] reports or records [(also mentioned in Section 4322)], and the DOC" policies and procedures mentioned in Sections 4322(c) & (d).[32] Both challenges fail as a matter of law.

### 1. DOC Is Not Constitutionally Obliged to Promulgate Internal Policies and Procedures

The "basic purpose" of the non-delegation doctrine is to prevent "[a]dministrators [from having] unguided and uncontrolled discretionary power to govern as they see fit."[33] To that end, when presented with a non-delegation challenge, Courts focus on the "'totality of protections against [administrative] arbitrariness,' including 'both substantive standards and procedural safeguards,' *i.e.*, due process or the law of the land, as the latter term appears in the Delaware Constitution."[34] Therefore, "while the existence of statutory standards is relevant

---

[32] Pls.' Reply Br. ¶ 27.

[33] *Atlantis I Condo. Ass'n v. Bryson*, 403 A.2d 711, 713 (Del. 1979).

[34] *Cannon v. State*, 807 A.2d 556, 564 (Del. 2002) (alteration in original).

in assessing the validity of a delegation of authority, the 'totality of protections', including the existence of safeguards, for those whose interests may be affected is determinative."[35]

Plaintiffs' "non-delegation" challenge rests on the disquieting premise that the DOC should be compelled to turn over to inmates all of its internal policies and procedures including, presumably, those relating to the chain of command within the DOC ranks, staffing protocols, security training protocols, institutional schematics and security response protocols. This premise provokes a visceral response that any such declaration would be senseless and dangerous. The Court need not dwell on its visceral concerns, however, because the Plaintiffs' attack on Sections 4322(c) & (d) does not withstand basic statutory construction, is contrary to settled precedent and offends sound public policy.

Plaintiffs' showcase argument is that Section 6517 and Sections 4322(c) & (d) are in irreconcilable conflict. As discussed at length above, no such conflict exists. The General Assembly has expressly authorized State agencies to maintain

---

[35] *Atlantis I Condo. Ass'n*, 403 A.2d at 713.

their internal policies and procedures as confidential.[36] Nothing in Section 6517 or

Sections 4322(c) & (d) conflicts with this general grant of authority or suggests

that the General Assembly has somehow improperly delegated "uncontrolled

power" to the DOC to "govern as [it] see[s] fit."[37]

Given that Sections 4322(c) & (d)'s confidentiality provisions are entirely

consistent with the DOC's statutory prerogative to "decline to make available" its

internal policies or procedures,[38] it is not surprising that Delaware courts have

consistently enforced these provisions without hesitation when denying demands

for such information from individuals incarcerated within DOC facilities.[39] These

decisions rest not only on fair readings of the applicable statutes, but also on sound

public policy. The unfettered distribution of internal DOC policies and procedures

to inmates or the general public would create significant security concerns for

---

[36] 29 *Del. C.* § 10112(b)(4).

[37] *See Atlantis I Condo. Ass'n*, 403 A.2d at 713. *See also* 29 *Del. C.* § 10112(b)(4); *Jackson*, 2008 WL 1850585, at *3, *5.

[38] *Jackson*, 2008 WL 1850585, at *3.

[39] *See Ross*, 722 A.2d at 814; *Newsom v. Biden*, 2011 WL 835135, at *9 (Del. Ch. Feb. 28, 2011); *Laub v. Danberg*, 2009 WL 1152167, at *3 (Del. Super. Mar. 4, 2009), *aff'd*, 979 A.2d 1111 (Del. 2009); *Jackson*, 2008 WL 1850585, at *5; *Riley*, 1999 WL 41279, at *3.

DOC employees, the inmates within DOC institutions and the public at large. As the court observed in *Ross*:

> any inmate intrusion into the operational or administrative concerns of DOC could constitute a threat to general security interests. The potential for disruption of the prison by inmates using this information is obvious.[40]

Plaintiffs have failed to plead facts or offer any argument that would allow a reasonable inference that Sections 4322(c) & (d) delegate authority to the DOC that ought to be vested elsewhere or that the DOC otherwise should not possess. Consequently, Plaintiffs' non-delegation challenge fails.

### 2. The Single-Subject Provision Is Not Implicated By Section 4322

The Single-Subject Provision is "intended to assure sufficient notice that 'legislation, the content of which was inadequately brought to the public['s] attention, or so-called sleeper legislation' does not slip through the General Assembly."[41] The provision is "satisfied if the title of the bill is sufficiently informative so as to put on notice parties interested in the general subject matter in

---

[40] *Ross v. Dep't of Correction*, 722 A.2d 815, 821 (Del. Super. Feb. 27, 1998), *aff'd in relevant part*, 722 A.2d 813 (Del. 1998); *accord Laub*, 2009 WL 1152167, at *3.

[41] *Evans v. State*, 872 A.2d 539, 551 (Del. 2005).

such manner as would lead them to inquire into it."[42]  It is violated only where "a bill contains multiple subjects or the title of the bill would 'trap the unwary into inaction.'"[43]

Here, Plaintiffs have failed to articulate any basis upon which the Court could reasonably conceive that Sections 4322(c) & (d) "slip[ped] through the General Assembly."[44]  To the contrary, the subject of Sections 4322(c) & (d)—confidential treatment of DOC policies and procedures—is directly related to the title of the section: "Protection of records."  The mere fact that several categories of records (all relating to those who have been convicted of criminal offenses in Delaware) are addressed in Sections 4322(c) & (d) cannot form the basis of a constitutional challenge to the statute under the Single-Subject Provision.

### D. Howard's Motion to Amend Must be Denied as Futile

"A motion for leave to amend a complaint is futile [and should therefore be denied] where the amended complaint would be subject to dismissal under

---

[42] *Opinion of the Justices*, 177 A.2d 205, 208 (Del. 1962).

[43] *Evans*, 872 A.2d at 551.

[44] *Id.*

Rule 12(b)(6) for failure to state a claim."[45]   Because Howard's Motion to Amend does not cure the Complaint's failure to plead sufficient injury to confer standing or its failure to state a claim, it must be denied.

Howard seeks to amend the Complaint to allege: (1) that he was prevented from performing legal research relating to the claims set forth in the Complaint in violation of his right to adequate access to the courts; and (2) that Sections 4322(c) & (d) are an "absolute bar to discovery of relevant evidence sought in the prosecution of non-frivolous claims alleging serious violations of constitutional rights."[46]   Neither proposed amendment fixes the Complaint's failure to plead facts from which the Court may draw a reasonable inference that Plaintiffs have suffered an injury sufficient to confer standing or have stated viable constitutional challenges to Sections 4322(c) & (d).

Howard's first proposed amendment regarding the DOC's denial of his access to needed legal authority is superfluous and ignores the fundamental flaws in his underlying claim.  The fact that he was denied access to legal authority,

---

[45] *Price v. E.I. DuPont de Nemours & Co.*, 26 A.3d 162, 166, 170 (Del. 2011).

[46] Mot. to Amend at 1–2.

namely, a decision from the Indiana Supreme Court that the JTVCC library had previously downloaded but later erased,[47] does not repair the failure of the Complaint (with or without the Amendment) to plead any facts from which Plaintiffs' standing to pursue their claims may be inferred or from which a constitutional defect in Sections 4322(c) & (d) can be discerned. Since Howard allegedly was denied access to legal authority in aid of researching a claim that is not legally viable, his proposed amendment to this effect is futile.

Howard's second argument is equally flawed. As this Court has now held, to the extent Howard claims that Sections 4322(c) & (d) improperly deny him access to DOC policies and procedures, he has failed to plead an injury that would be sufficient to confer standing.[48] To the extent Howard seeks redress for actual or potential violations of internal DOC policies and procedures, he has identified violations of policies and procedures that create mere "instrumental" rights, not

---

[47] The case Howard seeks is *Malott v. State*, 485 N.E.2d 879, 884 (Ind. 1985) *abrogated by Richardson v. State*, 717 N.E.2d 32 (Ind. 1999). He reasons that because *Whitfield v. State*, 524 A.2d 13 (Del. 1987), a case not present in either party's briefing, relies on *Malott*, access to *Malott* is necessary for "adequate access to the courts." Mot. to Amend at 1.

[48] *See supra* text accompanying notes 27–28.

"substantive rights," and he may not seek judicial intervention for any harm caused by such violations.[49]

## III.   CONCLUSION

For the reasons set forth above, Defendants' Motion to Dismiss is granted and Plaintiff's Motions for Summary Judgment and to Amend are denied.

**IT IS SO ORDERED.**

Very truly yours,

*/s/ Joseph R. Slights III*

---

[49] *See Sharif*, 1988 WL 7386, at *2.  *See also Wilson*, 466 F. Supp.2d at 571–72 (holding that inmates have no right to pursue claims based on violations of internal DOC policies and procedures, except those related to inmate grievance procedures which are made available to all inmates); *McCoy v. Taylor*, 1998 WL 842322, at *3 (Del. Ch. Nov. 12, 1998) ("This Court has specifically noted that it will not interfere with prison administrative issues because such matters are not readily susceptible to judicial oversight and fall within the auspices of the Executive branch of our State government."); *Williamson v. Taylor*, 1998 WL 324893, at *2 (Del. Ch. Mar. 13, 1998) ("[T]he Department of Corrections is part of the Executive Branch and courts should not interfere with the internal workings of Executive Branch agencies."); *Riley*, 1999 WL 41279, at *3 ("Courts are generally very reluctant to interfere with the administration of prisons."); *State ex rel. Tate v. Cubbage*, 210 A.2d 555, 564 (Del. Super. 1965) ("In . . . penal institutions, it is necessary or assumed that those who are put in charge have a given expertise.  For that reason the judiciary is loathe to interfere with their decisions . . . .").